The Honorable Suggestions of the United States Court of Appeals for the Fourth Circuit. We're not ready to hear argument in our next case 19-1674 which is Combe Incorporated v. Dr. August Wolff and various initials and words in German I can't pronounce so I won't try. So Mr. Pankow we'll hear from you first. Good afternoon your honors and may it please the court. Ross Pankow from Errant Fox on behalf of the appellant the Dr. Wolff Company. The district court's decision should be reversed because it was clear error for the court to find that Dr. Wolff's trademark Vagisan presents a likelihood of confusion with Combe's trademark Vagisil. Specifically the district court erred by misapplying five of the likelihood of confusion factors all of which should have been weighed in Dr. Wolff's favor. The most important of those factors were the first two the strength of the plaintiff's trademark which courts say is the paramount factor in the likelihood of confusion analysis and number two the similarity of the party's trademarks. The court's incorrect analysis of those two factors caused it to tip the overall balance of the confusion assessment in Combe's favor and to incorrectly rule for Combe. What the district court should have done is what the trademark trial and appeal board did in 2017 before this case was appealed to the district court. The TTAB examined the same likelihood of confusion factors and reached the opposite decision and found no likelihood of confusion. The TTAB reached that decision by correctly applying the crowded field doctrine which is critical to the strength of the mark factor and also to the similarity of the marks factor. What the crowded field doctrine holds is that when you have a mark like Vagisil which includes a merely descriptive element vagi and which has been co-existing for decades with a multitude of competitors who likewise use that same prefix for their trademarks then what you have as a matter of law is a crowded field of similar trademarks in which each member of that field gets only a very narrow scope of protection against competitors who also use vagi prefix. In addition what the law says is that when there is a very large number of third-party uses which is the case here the plaintiff's trademark has to be considered both conceptually and commercially weak and that overall the strength of the plaintiff's mark factor has to be weighed in the defendant's favor. So the district court made a clear error here in analyzing the strength of mark factor because it conducted the first part of that analysis correctly. It held that Vagisil was conceptually weak because of the widespread third-party use of the prefix vagi but then it went on to make a clear error by holding that those third-party vagi trademarks were irrelevant to Vagisil's commercial strength and that the commercial strength of Vagisil trumped its conceptual weakness. That conclusion was a clear error because what the law says is that when the amount of third-party use is powerful on its face it means that the plaintiff's mark is both conceptually and commercially weak. And here the third council if I'm remembering the record correctly a number of these third-party uses either had no sales or the sales were so insignificant that they were de minimis. It seems like I remember for some number of these third-party products the only sales were where either you or other counsel for your client were the ones who bought them. So it just it would appear that the that Combi's product just has a very dominant market position almost exclusive. Comb does have high sales of the product Vagisil that's correct your honor but that's not the end of the analysis and with regard to it's correct that some of the third parties did have did not yet have substantial sales. To provide the overall picture of the third party use your honor there were a total of 66 third-party Vagi trademarks that have either been registered or used over the lifespan of Vagisil and there were also 17 uses of Vagi prefix marks by third parties and 11 live registrations at the PTO. And so with regard to that group that you mentioned of there were 14 marks that the court the district court incorrectly considered irrelevant because they didn't have substantial sales but that conclusion is wrong as a matter of law because the relevant issue for third-party marks is not the amount of individual sales by each particular third party. Instead what's relevant is the overall cumulative impact that a large number of third-party marks has on the strength of the plaintiff's mark over time. And this is precisely what the Fourth Circuit held in Variety Stories versus Walmart, in Care First, and in Valador. For example in Variety versus Strong and held that the extensive evidence of third-party use meant that the plaintiff's mark was both conceptually and commercially weak. And the Variety court's reasoning for that decision was that one of the key metrics of commercial strength is the degree of exclusivity associated with the plaintiff's mark. And so when you have a landscape that's flooded with third-party uses as this landscape has been over time that degree of exclusivity is extremely low. And the variety isn't but counsel just these factors and I may have it wrong and I know this is an area where you probably have a lot more expertise but it looks like these are factors that the district court or whoever the fact finder is here the district court weighs. And here the district court looked at all the factors and looked you know beyond just the numbers into the quality of the you know of the alternative sales. Looked at a survey that was in evidence without objection and you know I certainly appreciate your position but as I read those factors it did not look like they were so cut and dry that this would amount to a error law. And it looks like what you're arguing is you think he got it wrong in his weighing analysis and maybe he did but why how does this establish clear error? It's clear error your honor because the reasoning of the district court's decision showed that the court didn't follow fourth circuit authority on the issue including those cases I just mentioned including Variety stores versus Walmart which is that courts when they analyze the impact of third party marks they don't dissect each individual mark just to examine the particular sales it's the cumulative impact over time that is relevant to the to the strength inquiry. And so here your honor the district court made a made a clear error by failing to follow that fourth circuit authority but it wasn't just those 14 marks. Didn't the were two surveys your honor one was a fame survey that goes to the strength of the mark factor and one was a confusion survey. Both of those surveys should have been given no weight because they were they were defective. They both used main problem with both of them was that they used an implausible and defective control. A what an implausible? Control. So both right and you're saying that you said Vagisox is that's the implausible control? That that's right your honor that the the problem with Vagisox which was the control in the fame survey and with Vagipur in the in the confusion survey was that they in addition to being implausible they weren't close enough to the mark being tested Vagisil to provide. And weren't there but the the court heard all of that and heard from experts on both sides so how don't we owe the district court deference in that regard when when I mean your client didn't conduct surveys. That's true your honor and and there is no obligation for a defendant to conduct a survey there's no you know inference. I understand that. It's true the court does get some discretion and it's a it's a clear error standard but here what the case law shows is that the court didn't follow the law with regard to survey science on these two surveys. Did your client submit uh evidence of of marks other other um marks? Third-party marks your honor? Yes uh-huh. Yes your honor this is the these are the 66 third-party vagi trademarks I mentioned earlier as well as the. Well I think so All right go ahead. So just a sort of big picture the relevance of these third-party marks your honor is that it shows that consumers have become conditioned to distinguishing over time between multiple vagi prefix marks in the marketplace. Two very good examples of that can be found in CVS, Rite Aid, Target, and Walmart and that's the Vagicane product and the Vagistat product. So if a consumer walks into any of those four stores now you would see Vagisil and Vagicane side by side on store shelves. The district court incorrectly disregarded Vagicane because it was a private label product but that was an error your honor because the the cases the court cited were trade dress infringement cases and this isn't a trade dress infringement case and in fact the trade dress cases that the court cited actually support wolf because they show that when consumers are are distinguishing between these marks what they look at is the words on the package. They look at Vagicane or they look at Vagistat. With and speaking of Vagistat the court incorrectly found that that mark was irrelevant because it was purchased by comb one one year before the trial in this case but that was an error also your honor because Vagistat co-existed in the same stores as Vagisil for 34 years and so comb's recent purchase of it doesn't erase from the public mind the fact that Vagistat co-existed in the same stores with Vagisil for years without confusion and so there's no reason why Vagisan couldn't likewise coexist in those same stores. The next significant error that the court made your honors was with regard to the similarity of the marks factor. Here the court made a clear error because it held that the descriptive prefix vaggie was the dominant portion of the party's marks and thus it focused its comparison on that element but that approach was a clear error because it is exactly the opposite of what the law requires. What the law says is that when you have two marks that share a descriptive component like the prefix vaggie the focus of the analysis shifts to the non-common components or in this case the suffixes san and sil. For example this is what the federal circuit held in swatch versus burger which involved the marks swatch and eyewatch and found them not completely similar because the generic root watch in those marks was not sufficient to make it make the mark similar and the same was true in a litany of other cases cited in our briefs including the water pit case which involved sinew sense versus sinew cleanse for sinus products and another case was the lambda nod case chiromatic versus chiropractic. Again in all those cases the court correctly focused the analysis on the suffix of the marks and because of the widespread third-party use of the generic prefix the court correctly found that the marks were dissimilar and that there was counsel once again I mean I think from our review of the record certainly the district court acknowledged the similarity at the beginning of the marks but it also discussed the differences it didn't ignore them it said the differences were only two of the seven letters and pointed out that you know it was at the end so again maybe he should have or the district court could have done differently but it's not like it ignored that I guess my problem is you're suggesting that because he didn't find in your favor on that it was wrong when it looks like he's looking at the suffix part of the mark he just gave it less weight than you argue it should have which is what happens in you know trials all the time you know there's evidence and a fact finder looks at it and one size it says often says it should get this weight and another says it should get different weight but yes what fact finders do and we're really not here to to second guess that well the error that the court made your honor was a misapplication of the law in the sense that the court spoke it said that the prefix vaggie was the dominant element for the sake of comparing the two marks that's contrary to what the law requires what the law says is that when you have two marks with a generic or descriptive element the analysis the dominant element is the by focusing on the generic prefix the the third likelihood of confusion factor that the court misapplied was the sophistication of the consuming public factor and the court made an error here by finding that the factor was neutral but this was a clear error because the record showed that a product of this type a vaginal care product used for an intimate part of the body is purchased with a high degree of care by consumers and combs own witness in the ttab proceeding acknowledged that fact as did wolf's witness and so and there are a number of cases involving personal care products including tampons lotions and hair care products that have held that consumers buy those products with a great deal of care which lessens the risk of confusion and the honors the district court decision should be reversed because the court committed several clear errors in its analysis of the likelihood of confusion thank you your honors thank you mr panko you've got some time uh on on rebuttal uh we'll now hear from is it ritu yes your honor yes all right well mr ritu um tell us what you have thank you judge um for the appellee comb may it please the court your honors uh this trademark appeal turns on the highly factually intensive issue of likelihood of confusion and can be decided just based upon the standard of review which after a full trial on the merits is the clearly erroneous standard we know under the clearly erroneous standard if the district court's account of the evidence is plausible the court of appeals may not reverse it even if the court would have the evidence differently but another way where there are two different permissible views of the evidence the fact finder's choice between those two cannot be clearly erroneous and in the supreme court anderson case said it best when they said that the trial on the merit should be the main event rather than the tryout on the road and this was the main event it was a full trial before judge with live testimony with dueling experts with 688 admitted exhibits and with a thorough complete supported 52 page decision by judge ellis finding that confusion is likely now wolf disagrees with judge ellis but it cannot show that the court was wrong or that his fact findings the court's facts findings were unsupportable or implausible now wolf first takes issue with the analysis of the strength of the mark the strength of the vagisil mark now as this court explained in variety and in grayson and elsewhere the commercial strength of a mark turns on whether consumers associate the mark with a unique source so to evaluate that the fourth circuit looks at a number of factors advertising expenditures consumer studies sales success unsolicited media attempts to plagiarize length and exclusivity of abuse the court looked at all of these thoroughly it based its finding that vagisil is a strong mark based upon multiple forms of potent evidence first vagisil was used for over or has been used for over 45 years that's joint appendix 458 there's been over a billion dollars of sales of vagisil products since 1991 alone um vagisil products a number of them have led numerous um product categories as the as the product leader in terms of both sales and units there was evidence that vagisil has been advertised extensively for decades in virtually every media possible tv internet radio you name it comb has spent over 425 million dollars since just 1993 advertising vagisil and importantly the court noted vagisil is consistently recognized in major publications and in popular culture it's on popular tv shows the big bang theory south park it even got the coup de gras of a trademark it got its own skit on saturday night live um it is a famous mark to boot the court also had an empirical survey conducted by comb showing that over 85 percent of people recognize vagisil and this is significant because it wasn't just buyers of the product it was men women across the country ages 18 or over over 85 percent recognize vagisil you can't get much better than that now wolf can't support can't challenge a lot of this evidence so that it nitpicks at two things it nitpicks at the third party evidence and the weight given to the fame survey turning to this the third party evidence courts do look at third party evidence to mark but as this court said in care first and grayson they look to whether the use is extensive and they look at its frequency and so necessarily a court must look at the quality of the uses to determine if they've had the impact on the plaintiff's mark you can't just take them at face value and in fact the court did that either the court explained that if these third party marks are not in use or if they have meager sales and advertising it's unlikely that consumers are familiar with the mark and therefore it's unlikely to denigrate the source identifying power of the plaintiff's mark this makes perfect sense if there are marks that are out there that nobody knows about how could that diminish the value of the plaintiff's mark and in this day and age with the internet people people could find anything everywhere there's uh i think 1.7 billion uh web pages out there and and um a lot of a lot of uh uses that are irrelevant and don't touch uh consumers um in this case for example the court and and and in the joint appendix at page 273 to 274 the court did a nice job uh laying out all the evidence um and as the as the court noted uh the evidence was was very meager um and and it make again it makes sense there were marks like veggie tone which had 346 dollars of sales in 2018 there were seven marks that a paralegal from combs law firm um went out and and bought over the over the internet but there's no evidence that anyone else has ever seen who bought those products um and so it stands to reason how can these products make vagisil any weaker when they're not found on the store shelves when people don't buy them when there's no evidence that people know about them uh the mere existence of the mark which is what we need to look at here and as as the court noted those marks shed little light without more on consumer perceptions they are in essence uh and the court didn't say this i'm saying this there is an essence um grains of sand on a beach um they're insignificant uh and and wolf's argument also fails for two other reasons first the third party marks that they rely upon did not share the similarities that vagisil and vagisan share they did not have veggie plus an s plus a vowel plus a consonant they were different marks second there were not many of them um there were evidence that were 66 registrations at some point in time but the only evidence of use of these marks was 15 uses and of those 15 the court noted 14 had extremely limited sales seven were purchased by the paralegal uh at wolf's counsel's law firm who went out over a period of two months to try to find everything he could under the sun but what's most telling is what there is testimony from wolf's business person that she did not know even though she had studied the market since 2011 she did not know of these marks until this case if these marks had any significance their main witness would have known about that and that that is at the joint appendix at 572 and 573 um but even if we accept the evidence it really does hail in comparison to the evidence in in cases including the variety store case variety store is telling because that was a a appeal of a summary judgment uh decision so the court didn't necessarily embrace embrace all of this third party use and in fact there were 539 marks in that case including businesses found by an investigator and what the court said is that's enough to raise an issue of fact and the court sent it back to the trial court and noted that fact finder could find that those third-party uses did not impact the plaintiff's mark and that goes to a fundamental point and that fundamental point is this is an issue for the fact and and and and the fact finder here did an incredibly detailed job at looking at the evidence and weighing it and certainly it was not a mistake um in the way it was done uh counsel also talked about the private label marks that um appear in in major retailers cvs and rite-aid and notes that the court that the case that the court relied upon which is mcneil nutraceuticals a third circuit case actually supports wolf's position it does not in that case the court noted and it's an interesting fact i didn't realize that these private label brands have existed since 1883 and the court said when you see these private label brands people have become accustomed over the last century to know that if it's got the store's name on the brand that it comes from the store and the court specifically said people are aware of what store they're in and they're aware when they see a product with that store name of what it is so therefore it's not likely to cause confusion judge ellis said just that here he said these third-party marks are not relevant because they all have the name brands on them they have cvs they have writing they have equate they have up and up and therefore consumers are going to know they're not going to perceive vagicaine as a trademark they perceive the store brands as the trademark as the court said to do in mcneil nutraceuticals um and it's just a signal that this is the this is the generic store version of the famous vagisil product this is supported empirically by the survey that that combed it and that survey showed that um nobody in that survey mentioned vagicaine nobody they did however mention the walmart private label brand equate and 1.7 of people did that so it just shows the insignificance of that that particular brand also to that end uh the court has noted that when we're dealing with experts an appellate court should be expecting and i quote uh hendrix an appellate court should be especially reluctant to set aside a finding based upon a trial court's evaluation of conflicting expert testimony and that's what we had conflicting testimony although comb had two surveys wolf had none um on the issue of vagistat that is a brand that uh comb purchased in 2007 importantly there is testimony in the record from comb's main witness and this is at the joint appendix at 494 that vagistat was purchased to enter into a new category that comb had not been in before a category that did not compete with vagisil and that category is the antifungal yeast infection category now judge ellis the court decided that that was different enough that it didn't harm the value of the vagisil mark and wolf disagrees but again that disagreement does not constitute clear error especially given the fact that wolf's own paralegal who went into stores testified that he did not see vagistat next to vagisil it was separate and it was next to monostat which is the competing product and that is the at the joint appendix at 241 um wolf also takes issue with the fame survey again the the court looked at this in detail uh they found that the vagisox control was appropriate and that was a perfectly um sound decision because there was evidence uh elicited in cross-examination of wolf's expert that the u.s patent and trademark office has registered zox formative marks before beyond that wolf's expert conceded that botox is a plausible name that's at 445 wolf's main corporate witness conceded that vagisox itself this control and i quote could be a plausible name for a vaginal product that's at 574 in the record and again the 5.3 percent awareness rate for vagisox showed that it did just what controls in this type of survey do and there's testimony on that and i refer to the appendix at 294 but at the end of the day where does this all go this all goes to the issue of strength and wolf cannot show that it was clearly erroneous to find vagisil strong because its own expert conceded three times that vagisil is strong its expert said and i quote that vagisil is well known however you define it at another time he said it is well known quote relative to other brands in this category then another time he said vagisil is well known in this category and this is at the joint appendix at 443 and 444 with those admissions with all the evidence wolf cannot show that the court clearly erred in finding vagisil famous wolf also takes issue with the similarity between the marks it is fundamental within this circuit and outside of this circuit that one cannot and should not dissect trademarks they must be looked at in their holes secondly strong marks must be afforded a greater scope of protection so that less similarity is required with that lens and those rules the court did not err in its factual findings and its factual findings were first compared as a whole vagisil and vagisan are similar in sight and sound because they both have vagis and a vowel and then a consonant that's at 297 where it also found that the minor differences between these marks final two vowel and consonant was less pronounced because it was at the end of the mark the court found third that the marks are perceived similar by the eye and the ear fourth the court found that the meaning evoked by the marks is similar because both connote the vaginal area this is all confirmed and supported by combs confusion survey where combs expert used a very conservative control by showing people just the mark vagisand and people confuse that with vagisil not with any other vagi marks that wolf contends are out there now wolf talks about the cases certain cases and we've already distinguished those on pages 40 to 42 of our brief the court distinguished them on ja 229 to 230 but generally speaking those cases are inapplicable to this situation because none involve a famous mark like vagisil mark that's saturday night live and that 90 percent of the general public know about none of them involve marks like that in all of those cases none of the marks involve marks that had the same amount of letters for the same products with the same prefix with the same cadence with the same cadence and with the same structure and sound and there are contrary cases we cited the uh communication satellite case which is a fourth circuit case where com sat was found confusingly similar to com set even though the prefix com is short for communications so under that case um certainly the judges the court's decision stands on the issue of actual confusion as as the court noted well comb did a confusion survey wolf uh criticizes that survey as well in its briefs and uh same thing here um this is you know if we were at trial uh perhaps we could argue over the validity of the survey but this was carefully considered um and and the court's reasoning on the survey is is um very solid the survey used a design called the ever ready ready survey design which has been called the gold standard and has been accepted um in this circuit um that the control uh there says that vaggie purr was um not a good control because it um wasn't close enough and and it was too foreign sounding but the evidence shows or the record shows there was no evidence of that and in fact to the contrary in this survey none of the respondents mentioned that they thought that vaggie pure was a foreign sounding mark so that that that criticism is valid and as the court noted um wolf can criticize the controls used in the confusion survey but they didn't test any themselves um and and certainly this control did the job of coming as close as possible to the mark without infringing it so it was a sound a sound design wolf also complains that the way the confusion survey was tallied was improper because uh the court the expert didn't look at the reasons why people gave for their answers when they confused vagisil and vagisand and that's that's scientifically invalid and and the record shows that wolf's own expert conceded that he does not tally confusion results that way uh that alone should end the end the argument and that's at 450 um juan appendix 450 in the record and the court explained it would be and instead look at the reasons people gave for their answers irrespective when you when you analyze the survey the way that wolf says it should the results pop up to 21.5 wolf has suggested that we should double count the control in which case the results are 11 to 12 but even though that would be improper it still is indicative of confusion and i refer to the sarah case the fourth circuit's case where the court noted um that 10 to 12 percent could be um good results um turning to consumer sophistication wolf argues that the the court errored by finding that this factor does not favor either party this is an interesting issue because there's two different two different types of evidence that was submitted wolf submitted evidence that people are careful when they buy a product like this home submitted evidence that many people are embarrassed by a product like this and the conditions it treats so they're they will therefore go into the store and when they call it grab and go or shy to buy and they grab these products and get out and they don't spend a lot of time deliberating even wolf's corporate witness admitted that this is a phenomenon and this is a joint appendix for 545 577 now because confusion must be based upon the least sophisticated person we think this factor should have favored us but ultimately the court decided it favors neither party and so while we disagree with that there are two plausible interpretations for this factor and so we therefore cannot show that that was clearly erroneous and so um certainly uh the court's uh decision should stand on that and the other facts factors um i or stated that there is coexistence of its trademark with um vagisil and vagisand in the united kingdom um even though that is irrelevant uh based on the fuji case that we cited in our papers i do want to point out to the court uh that there is an ongoing case in the united kingdom and that is not true there and we note this in our brief there actually has been confusion there again it's irrelevant but a point that is worth worth clarifying so in conclusion um the main in alexandria virginia and wolf cannot be and should not be able to relitigate it here after reviewing and weighing a substantial body of evidence district court found that there is a likelihood of confusion between vagisil and vagisand its analysis was careful and it looked at the multiple individual confusion factors which are supported by ample record evidence and are are issues of fact and in the fourth circuit the weighing of those factors is likely is is likewise an issue of fact so when we look at all of the evidence um it is well supported and one cannot be left the definite and firm conviction that a mistake was made there was no mistake made and therefore the district court's judgment should be affirmed thank you thank you mr ratu uh mr panko you have time and rebuttal thank you your honor picking up on the sophistication of consumers factor both the court and comb conflate the issue of consumer care or recklessness shyness or embarrassment so the court um the court's view was that essentially because consumers may experience some shyness or embarrassment about buying vaginal care that essentially they they're reckless about buying those products or don't exercise care but that conclusion is contrary to the law as explained earlier because in herbal life and other cases to consider products of this type these are products that are purchased with a high degree of care and again combs witnessing the ttab proceeding acknowledged that and so that factor as a matter of law should have been weighed in in wolf's favor with regard to the strength of mark comb attempts to diminish the third-party evidence that was submitted by wolf by arguing that none of the marks had the prefix vaggie plus the letter s plus a vowel plus a consonant that argument illustrates precisely how weak the vagisil mark is and how narrow its scope of protection has become because of the widespread third-party use and registration of vaggie over time first at birth when it adopted the mark vagisil it selected a conceptually weak mark that had the prefix vaggie for vaginal care products and then it proceeded to acquiesce in dozens of third-party uses and registrations over the years for vaggie prefix trademarks and the result now is that over the years consumers have become conditioned to distinguishing between including as I mentioned other vaggie s trademarks including vagistat which was sold in the same stores as vagisil for 34 years without any evidence of consumer confusion now with regard to vagistat comb argues that that product and the court included this as part of its findings that vagistat was irrelevant because it was in a different product category that finding was wrong because they're both vaginal care products and what the law says is that when you're looking at third-party marks the products don't need to be identical they don't need to be both vaginal moisturizers if they're in the same general category which these were are both vaginal care products then it's a relevant third-party mark and vagistat was particularly relevant again because it was sold in the exact same stores next to the vagisil product for over three decades with no evidence of confusion and no objection from comb and so there's no reason why vagisam couldn't likewise coexist with regard to similarity of the party's trademarks it is not a violation of the anti-dissection rule for the court to focus its analysis on the suffix in fact that's what the law requires when two marks have a descriptive when they share a is the required approach to compare the two marks and with regard to the actual confusion survey conducted by mr perrette com attempts to defend the the control vagi per as i mentioned in the main portion of my argument that that control was improper because it it failed to serve the function of a control which is to determine whether respondents who answer the question whether they believe the mark vagisam is put up who they who they think it's put out by whether they really answered the way they did because they expressed confusion or because of something else about the mark because of the vagi prefix or something else and so in order to really get a true gauge of that what the control should have been is something that had vagi plus the letter s and so by doing that mr perrette would have gotten a true reading of whether any confusion was caused by the vagi prefix or something else and that was particularly important here because of the coexistence of other vagi plus s trademarks over the years that you stat that you soothe that you silk that you stack and others and so that defect in the confusion survey rendered mr perrette's confusion survey unreliable and and the court should have taken the same approach that the western district of tennessee did in another in a similar case also involving mr perrette which was the ducks unlimited case which had the same problem it was a confusion survey the the case there involved two duckhead marks and mr perrette's survey used a control that didn't look anything like a duckhead it wasn't similar enough to a duckhead and so the effect was it in the test cell and therefore the court in ducks limited said that mr perrette's survey was entitled to no weight and the district court should thank you your honor i want to thank both council for their arguments in this case and with with that i'll ask the clerk to adjourn court for the day but let me say before that if you argued in the fourth circuit before you know it's our tradition to come down and greet council after argument which obviously we can't do with our covid video proceedings so we look forward to seeing you on another occasion when we can greet you in person so with that uh the clerk will adjourn court till tomorrow and put the judges in the breakout thank you this honorable court stands adjourned until tomorrow i say to united states and this honorable court
judges: G. Steven Agee, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.